IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 18-cv-03360-PAB-SKC

ANNE LAWSON,

    Plaintiff,

v.

GLOBAL PAYMENTS INC., a Delaware corporation, and
HEARTLAND PAYMENT SYSTEMS, LLC, a Delaware limited liability company f/k/a Heartland Payment Systems, Inc.,

    Defendants.

---

**ORDER**

---

This matter is before the Court on Defendants' Motion to Dismiss Due to Improper Venue or, In the Alternative, to Transfer Venue to the District of New Jersey [Docket No. 16]. The Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1367.

**I. BACKGROUND**

This case arises out of the termination of plaintiff's employment with defendants on September 27, 2016. Docket No. 1 at 3, 7, ¶¶ 14, 30. On December 31, 2018, plaintiff filed this lawsuit asserting claims for wrongful termination on the basis of gender in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, termination in violation of Colorado public policy, tortious interference with prospective business relations under Colorado law, and unpaid wages and penalties under the Colorado Wage Claim Act ("CWCA"), Colo. Rev. Stat. § 8-4-101 *et seq.*

Docket No. 1 at 9-11. On January 23, 2019, defendants moved to dismiss the action for improper venue or, in the alternative, to transfer it to the U.S. District Court for the District of New Jersey on the basis of a forum selection clause in the "Relationship Manager Agreement" (the "Agreement") entered into by plaintiff and Heartland Payment Systems, Inc. ("Heartland" or "HPS") on May 26, 2014. *See* Docket No. 16 at 1-2; Docket No. 16-2 at 8 (signature page signed by plaintiff and Heartland Payment Systems Inc. on May 26, 2014).[1] The forum selection clause provides, in relevant part:

> Any suit, action or proceeding arising out of or relating to this Agreement shall be brought only in a Superior Court of New Jersey or the United States District Court for the District of New Jersey and Employee hereby agrees and consents to the personal and exclusive jurisdiction of said courts over him or her as to all suits, actions and proceedings arising out of or related to this Agreement, and Employee further waives any claim that such suit, action or proceeding is brought in an improper or inconvenient forum.

Docket No. 16-2 at 5, ¶ 17. The Agreement also contains a choice-of-law provision stating that the "Agreement shall be governed by, and construed in accordance with the laws of the State of New Jersey, without giving effect to conflict of laws principles." *Id.*, ¶ 16.

On February 14, 2019, plaintiff filed a response opposing defendants' motion for dismissal or transfer. Docket No. 31. She argues that (1) dismissal under Fed. R. Civ. P. 12(b)(3) is procedurally improper; (2) the forum selection clause does not apply to her claims; and (3) enforcement of the forum-selection clause would be unreasonable

---

[1] Plaintiff does not dispute that she signed the Agreement or that the Agreement is valid and binding as to both defendants. Although plaintiff executed the agreement with Heartland, Docket No. 1 at 3, ¶ 14, Heartland merged with defendant Global Payments, Inc. in April 2016. *Id.* at 2, ¶ 9; Docket No. 16-1 at 4, ¶ 13.

in this case.  See Docket No. 31 at 3-7.

## II.  DISMISSAL UNDER FED. R. CIV. P. 12(b)(3)

Defendants move to dismiss this case for improper venue under Fed. R. Civ. P. 12(b)(3).  Docket No. 16 at 4.  However, a "forum-selection clause does not render venue in a court 'wrong' or 'improper' within the meaning of [28 U.S.C.] § 1406(a) or Rule 12(b)(3)."  *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. Tex.*, 571 U.S. 49, 59 (2013); *see also Niemi v. Lasshofer*, 770 F.3d 1331, 1351 (10th Cir. 2014).  Instead, the proper mechanism for enforcing a forum-selection clause is a motion to transfer under 28 U.S.C. § 1404(a).  *See Atl. Marine Constr. Co.*, 571 U.S. at 59.  Defendants' request for dismissal under Rule 12(b)(3) will therefore be denied.

## III.  TRANSFER UNDER 28 U.S.C. § 1404(a)

Defendants alternatively seek transfer of this case to the District of New Jersey pursuant to 28 U.S.C. § 1404(a).  See Docket No. 16 at 5.  Section 1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a).  Courts weigh a number of private and public interest factors in determining whether transfer is appropriate under § 1404(a).  Relevant private interests include "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive."  *Atl. Marine Constr. Co.*, 571 U.S. at 62 n.6 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S.

3

235, 241 n.6 (1981)).  Public interest factors include: "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* (internal quotation marks and bracket omitted)).

In the ordinary case, the party seeking transfer under § 1404(a) bears the "burden of establishing that the existing forum is inconvenient." *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir. 1991).  The analysis changes, however, when a motion for transfer is based on an applicable, mandatory, valid, and enforceable forum-selection clause.  *See Atl. Marine Constr. Co.*, 571 U.S. at 62; *cf. Azima v. RAK Inv. Auth.*, 926 F.3d 870, 875 (D.C. Cir. June 18, 2019) (discussing analysis that applies when motion to dismiss for *forum non conveniens* is based on an "applicable, mandatory, valid, and enforceable" forum-selection clause).  First, "the plaintiff's choice of forum merits no weight" and "the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Atl. Marine Constr. Co.*, 571 U.S. at 63.  Second, the court resolving the transfer motion may consider only public-interest factors and not the parties' private interests on the premise that parties who agree to a forum-selection clause "waive the right to challenge the preselected forum as inconvenient or less convenient." *Id.* at 64.  Finally, the "transfer of venue will not carry with it the original venue's choice-of-law rules." *Id.*  The practical effect of these adjustments to the transfer analysis is that "forum-selection clauses [will] control except in unusual cases." *Id.*

Before applying this modified analysis, a court must determine whether a valid

and enforceable forum-selection clause applies to the parties' dispute. A mandatory forum-selection clause is presumed valid "unless the party challenging it clearly shows that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Niemi*, 770 F.3d at 1351 (internal quotation marks and bracket omitted) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)). A forum-selection clause is mandatory if it "contains clear language showing that jurisdiction is appropriate only in the designated forum." *K & V Scientific Co., Inc. v. Bayerische Motoren Werke Aktiengesellschaft*, 314 F.3d 494, 498 (10th Cir. 2002) (internal quotation marks omitted).

There appears to be no dispute in this case that the forum-selection clause contained in the parties' Agreement is mandatory. *See* Docket No. 1 at 3, ¶ 14; Docket No. 31 at 2; *see also Milk 'N' More, Inc. v. Beavert*, 963 F.2d 1342, 1346 (10th Cir. 1992) (holding that the use of the word "shall" in a forum selection clause indicated a "mandatory intent"). Instead, plaintiff contends that the provision does not apply to her claims because they do "not seek to enforce any terms or provisions of the Agreement." Docket No. 31 at 6 (internal quotation marks omitted). Plaintiff also argues that enforcement of the forum-selection clause would be unreasonable because the clause contravenes the policies underlying Title VII and the CWCA, plaintiff did not have equal bargaining power with regard to the Agreement, there is no connection between this case and New Jersey, and plaintiff will be deprived of a forum in which to litigate her Colorado claims. *See* Docket No. 31 at 6-15.

The Court begins by addressing whether the forum-selection clause applies to

5

plaintiff's claims. "The scope of a forum-selection clause is evaluated according to ordinary principles of contract interpretation." *Kelvion, Inc. v. PetroChina Canada, Ltd.*, 918 F.3d 1088, 1092 (10th Cir. 2019); *see also Azima*, 926 F.3d at 874 (stating that the scope of a forum-selection clause is assessed "using normal principles of contract interpretation").[2] Thus, courts begin with the plain language of the agreement to ascertain the parties' intent. *See Kelvion*, 918 F.3d at 1092-93 (looking to the language of a forum-selection clause to determine its scope); *Azima*, 926 F.3d at 879 (noting that "whether or not a forum-selection clause applies depends on what the *specific clause at issue says*" (internal quotation marks and brackets omitted)); *Highland Lakes Country Club & Cmty. Ass'n v. Franzino*, 892 A.2d 646, 656 (N.J. 2006) (stating that court's obligation is to "examine the plain language of the contract and the parties' intent"); *Albright v. McDermond*, 14 P.3d 318, 322 (Colo. 2000) ("A court's primary obligation is

---

[2]Although the Agreement is governed by New Jersey law, *see* Docket No. 16-2 at 5, ¶ 16, and plaintiff contends that the Court should apply Colorado law to contract interpretation issues, Docket No. 31 at 7, n.3, both parties rely on federal cases to interpret the meaning and scope of the forum-selection clause. *See* Docket No. 16 at 8; Docket No. 31 at 5-6; Docket No. 33 at 2-3. The Court will therefore "assume that [the parties] do not rely on any distinctive features of [state law], and will base [its] decision on general contract law principles." *Azima*, 926 F.3d at 876; *see also Kelvion*, 918 F.3d at 1092 n.2 (assuming, based on the parties' representations, that Canadian law would apply similar contract principles as the Tenth Circuit); *Huffington v. T.C. Group, LLC*, 637 F.3d 18, 21 (1st Cir. 2011) (holding that the scope of the forum-selection clause turned on the plain language of the contract because the parties did not contend that Delaware law differed from "ordinary contract principles"). To the extent the Court is obligated to consider state law despite the parties' reliance on federal cases, *see Yavuz v. 61 MM, Ltd.*, 465 F.3d 418, 430 (10th Cir. 2006) (holding that federal law requires courts to "ordinarily honor an international commercial agreement's forum-selection provision *as construed under the law specified in the agreement's choice-of-law provision*"), the Court perceives "no material discrepancies between" Colorado, New Jersey, and federal common law on the "validity and interpretation" of the forum-selection clause. *Excell, Inc. v. Sterling Boiler & Mech., Inc.*, 106 F.3d 318, 320 (10th Cir. 1997).

6

to effectuate the intent of the contracting parties according to the plain language and meaning of the contract.").

The forum-selection clause at issue in this case provides that "[a]ny suit, action or proceeding arising out of or relating to th[e] Agreement shall be brought only in a Superior Court of New Jersey or the United States District Court for the District of New Jersey." Docket No. 16-2 at 5, ¶ 17. Courts have construed similar language – and, in particular, the phrase "relating to" – broadly. *See, e.g.*, *Azima*, 926 F.3d at 877 (noting that the phrase "in connection with" is "equivalent to 'in relation to,' which is quite broad"); *Chelsea Family Pharmacy, PLLC v. Medco Health Sols., Inc.*, 567 F.3d 1191, 1199 (10th Cir. 2009) ("The ordinary meaning of the phrase 'relating to' is broad."); *Digital Landscape Inc. v. Media Kings LLC*, 440 P.3d 1200, 1206-07 (Colo. App. 2018) (discussing state and federal cases interpreting the phrase "relating to" as being broad in scope). However, the Court must also consider what the phrases "arising out of" and "relating to" modify. In this case, the forum-selection clause applies only to claims that arise out of or relate to the "Agreement." *See* Docket No. 16-2 at 5, ¶ 17; *see also Azima*, 926 F.3d at 877 (stating that "a dispute arises in relation to an agreement if the origin of the dispute is related to that agreement, meaning it has some logical or causal connection to the agreement" (internal quotation marks, bracket, and ellipsis omitted).

There are two ways of interpreting this limitation. Under the broad reading urged by defendants, the forum-selection clause would encompass any claim arising out of either the Agreement or the parties' employment relationship. In other words, any claim having a connection to plaintiff's employment would fall within the scope of the forum-selection clause, even if the subject of the claim was not addressed in the Agreement

7

itself. *See* Docket No. 16 at 8 (arguing that "claims arising out of or relating to [plaintiff's] *employment* certainly fall within the ambit of the forum-selection clause" (emphasis added)); *see also, e.g.*, *Slater v. Energy Servs. Group Int'l, Inc.*, 634 F.3d 1326, 1331 (11th Cir. 2011) (holding that forum-selection clause governing "all claims or causes of action relating to or arising from" employment agreement "include[d] all claims arising directly or indirectly from the relationship evidenced by the contract" (internal quotation marks omitted)); *St. Charles v. Sherman & Howard L.L.C.*, No. 14-cv-03416-RM-CBS, 2015 WL 1887758, at *4 (D. Colo. Apr. 24, 2015) (holding that a plaintiff's discrimination claims "[arose] in connection" with her employment agreement because they resulted from her employment relationship and "involve[d] events which occurred at least in part while the [agreement] was in effect"). Under a narrower reading, the forum-selection clause would apply only to those claims having some logical connection to the Agreement itself as opposed to the parties' broader employment relationship. *See, e.g.*, *Nuzzi v. Aupaircare, Inc.*, 341 F. App'x 850, 851-53 (3d Cir. 2009) (unpublished) (holding that arbitration clause governing "any claims or disputes arising out of, or related to this Agreement" did not encompass the plaintiff's claims for pregnancy discrimination under New Jersey law because the claims did not involve "a contract term, a condition of employment, or some other element of the contract itself"); *Necchi S.p.A. v. Necchi Sewing Mach. Sales Corp.*, 348 F.2d 693, 695-97 (2d Cir. 1995) (construing clause that governed disputes "arising out of or in connection with this Agreement" as applying only to claims "directly relate[d] to certain provisions in the agreement"); *Garfinkel v. Morristown Obstetrics & Gynecology*

8

*Assocs., P.A.*, 773 A.2d 665, 668, 672 (N.J. 2001) (holding that arbitration clause governing "any controversy or claim arising out of, or relating to, this Agreement or the breach thereof" did not apply to state gender discrimination claims because the language of the clause suggested that "the parties intended to arbitrate only those disputes involving a contract term, a condition of employment, or some other element of the contract itself").

In this case, the choice between these two interpretations is resolved by reading the Agreement as a whole. *See Fed. Deposit Ins. Corp. v. Fisher*, 292 P.3d 934, 937 (Colo. 2013) ("The meaning of a contract is found by examination of the entire instrument and not by viewing clauses or phrases in isolation." (internal quotation marks and alteration omitted)); *Hardy ex rel. Dowdell v. Abdul-Matin*, 965 A.2d 1165, 1169 (N.J. 2009) ("A basic principle of contract interpretation is to read the document as a whole in a fair and common sense manner."). The Agreement contains, in addition to the forum-selection clause, an attorney's fees provision and jury trial waiver, both of which apply to "any suit, action or proceeding relating, in any way, to [plaintiff's] employment with, or termination from, HPS." Docket No. 16-2 at 6, ¶¶ 18-19. These provisions demonstrate that Heartland knew how to draft contract terms extending to all claims arising out of the parties' employment relationship. Heartland's decision to use more circumscribed language in the forum-selection clause therefore evinces an intent to make that clause narrower in scope. *See Daniels v. Dataworkforce LP*, No. 14-cv-00822-KMT, 2014 WL 6657794, at *2 (D. Colo. Nov. 24, 2014) ("If the parties intended to include FLSA or other statutory employment claims within the scope of the forum selection clause, they could have used broader language so as to encompass all claims

arising out of 'the employment relationship between' Plaintiff and Defendant."); *see also Azima*, 926 F.3d at 878 ("If the parties had wished to mark a narrower boundary for this forum-selection clause, they could have easily done so. They might have restricted the clause to disputes 'arising out of, or in connection with,' the Settlement Agreement *itself*").[3]

Construing the forum-selection clause to cover only those claims relating to either the Agreement itself or those aspects of plaintiff's employment specifically governed by the Agreement, the Court concludes that the clause does not encompass plaintiff's Title VII and wrongful termination claims.[4] Nothing in the Agreement specifically addresses the issue of discrimination by Heartland, and plaintiff's right to be free from gender discrimination under Title VII and state common law arises independently of the parties' contractual relationship. *See Nuzzi*, 341 F. App'x at 851-53 (finding that state pregnancy discrimination claims did not involve "a contract term, a condition of employment, or some other element of the contract itself"); *Garfinkel*, 773 A.2d at 672-73 (reaching same conclusion as to state gender discrimination claims);

---

[3]Defendants argue that the language of the jury waiver provision supports a conclusion that the Agreement encompasses "any claim Employee asserts against Defendants alleging workplace discrimination . . . or wrongful discharge." Docket No. 33 at 3 n.2 (emphasis omitted) (quoting Docket No. 16-2 at 6, ¶ 19). In fact, the provision states that the "*jury waiver* applies to any claim Employee asserts against HPS alleging workplace discrimination." Docket No. 16-2 at 6, ¶ 19 (emphasis added). It does not purport to define the scope of the Agreement as a whole.

[4]Plaintiff's claim for termination in violation of public policy is predicated on the same allegations as her Title VII claim – namely, that defendants terminated her employment because of her gender. *See* Docket No. 1 at 10, ¶¶ 46-47 (alleging that defendants terminated plaintiff because of her gender in violation of Colorado's "public interest in the freedom from discrimination on the basis of a number of protected classes, including gender").

*see also Crawford v. Refinishing Touch, Inc.*, 2016 WL 7743691, at *2 (N.D. Ga. June 30, 2016) (finding the plaintiffs' rights under the Fair Labor Standards Act to be "independent of the terms" of their employment contract). The Court therefore finds that the forum-selection clause does not cover plaintiff's Title VII and wrongful termination claims.[5] Because defendants have not otherwise shown that the District of Colorado is an inconvenient forum in which to litigate these claims, *Chrysler Credit Corp.*, 928 F.2d at 1515, transfer of the Title VII and wrongful termination claims under § 1404(a) is unwarranted.

The Court's analysis is somewhat different as to plaintiff's CWCA and tortious interference claims. Because these claims are based on defendants' failure to pay plaintiff commissions and signing bonuses, *see* Docket No. 1 at 10-11, they arguably relate to provisions of the Agreement governing compensation. *See* Docket No. 16-2 at 1-2, ¶¶ 3-4; *see also, e.g.*, *Sharpe v. Ally Fin., Inc.*, 2017 WL 5078900, at *3 (W.D.N.C. Nov. 3, 2017) (holding that forum-selection clause governing "all litigation 'in connection' with the employment agreement" applied to plaintiff's FLSA and state wage claims because the employment agreement "specifically define[d] [her] wage rate,

---

[5]Even if the language of the forum-selection clause was ambiguous, any ambiguities in the Agreement must be construed against Heartland. *See* Docket No. 16-2 at 7 (stating that the Agreement was "drafted by counsel to [Heartland]"); *see also K & V Scientific Co., Inc.*, 314 F.3d at 500 (stating that the rule in the Tenth Circuit is that an ambiguous forum-selection clause "must be construed against the drafter"); *In re Miller's Estate*, 447 A.2d 549, 555 (N.J. 1982) ("Where an ambiguity appears in a written agreement, the writing is to be strictly construed against the draftsman."); *Nat'l Cash Register Co. v. Lightner*, 388 P.2d 781, 787 (Colo. 1964) ("[I]f there exists any ambiguity as to what transactions are covered by the provisions in question . . . , those provisions must be interpreted most strongly against the party drawing the contract . . . .")

including her overtime wage rate"). The Court nevertheless finds that transfer of these claims would be inappropriate.[6]

As the Supreme Court held in *Atlantic Marine*, a valid and applicable forum-selection clause must be given effect "[i]n all but the most unusual cases." 571 U.S. at 66. However, the standards set forth in *Atlantic Marine* "depend crucially on the assumption that a valid forum selection clause will cover each individual claim." *Eastcott v. McGraw-Hill Global Educ. Holdings, LLC*, 2016 WL 3959076, at *1 (E.D. Pa. July 22, 2016) (quoting Stephen E. Sachs, *Five Questions After Atlantic Marine*, 66 Hastings L.J. 761, 772 (2015)). Absent that assumption, "there may be a presumption *for* transfer as to some parties or claims, but a presumption *against* transfer as to others." Sachs, *supra*, at 772. This appears to be the situation here. Assuming plaintiff's CWCA and tortious interference claims fall within the scope of the forum-selection clause, there is a presumption in favor of transferring those claims to the District of New Jersey and a competing presumption in favor of retaining plaintiff's Title VII and wrongful termination claims in the District of Colorado. *See Employers Mutual Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010) ("Unless the balance is strongly in favor of the [defendant], the plaintiff's choice of forum should

---

[6]The Court assumes that the forum-selection clause is enforceable under *M/S Bremen* and therefore does not address plaintiff's arguments as to enforceability. *See* Docket No. 31 at 7-13; *see also Cherry Creek Mortg. Co., Inc. v. Jarboe*, No. 18-cv-00462-KLM, 2018 WL 6249887, at *2-3 (D. Colo. Nov. 29, 2018) (treating the enforceability of a forum-selection clause and the balance of the public-interest factors as separate inquiries).

rarely be disturbed." (internal quotation marks and brackets omitted)).[7]

Neither party has addressed how the Court should proceed if only some of plaintiff's claims are encompassed by the forum-selection clause. Courts faced with similar circumstances have generally followed one of two approaches: they have either severed the claims subject to transfer under Fed. R. Civ. P. 21, thereby bifurcating the case into separate actions, or they have weighed the fact that certain claims are not subject to transfer among the other public interest factors to determine whether transfer would be appropriate for the action as a whole. See Sachs, *supra*, at 772-73.[8]

The Court opts for the latter approach. Because the balance of public-interest factors overwhelmingly favors allowing plaintiff to pursue her entire lawsuit in the District of Colorado, the Court finds this to be an "unusual case" in which the forum-selection clause should not be enforced.

As discussed above, relevant public-interest factors include the interest in judicial economy, administrative difficulties arising from court congestion, the burden of jury

---

[7]The plaintiff's choice of forum is accorded less weight "if the plaintiff does not reside in the district" or "the facts giving rise to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum." *Id.* at 1168 (internal quotation marks omitted). Neither of these circumstances is present in this case.

[8]While the existence of a valid and enforceable forum-selection clause precludes the Court from considering arguments about the parties' private interests in determining whether transfer is appropriate, arguments related to the public-interest factors remain relevant. See *Atl. Marine Constr. Co., Inc.*, 571 U.S. at 64. In cases, such as this one, where the private-interest factors give rise to opposite presumptions regarding transfer, the public-interest factors may assume added significance. See, e.g., *Oceanside Ten Holdings.com, LLC v. Mktg., Inc.*, No. 17-cv-02984-MSK-KMT, 2018 WL 2277004, at *3-4 (D. Colo. May 18, 2018) (looking to public-interest factors to determine whether to retain or transfer a case in which only some of the plaintiff's claims were covered by the forum-selection clause).

duty on members of a community unconnected to the litigation, the interest in deciding local controversies at home, and the desire to have cases tried in a forum that is familiar with the governing law. *See Yavuz*, 465 F.3d at 426; *Azima*, 926 F.3d at 875; *see also Atl. Marine Constr. Co.*, 571 U.S. at 62 n.6 (setting forth more abbreviated list of public interest factors). Courts faced with cases in which only certain claims are subject to transfer have considered the undesirability of piecemeal litigation in multiple fora as a significant factor in the transfer analysis. *See, e.g.*, *Oceanside Ten Holdings.com, LLC*, 2018 WL 2277004, at *4; *Eastcott*, 2016 WL 3959076, at *3.

In this case, the public-interest factors tip strongly in favor of retaining this case in the District of Colorado. New Jersey does not have any apparent connection to either this lawsuit or the parties. Although Heartland was once headquartered in New Jersey and continues to do business in the state, Docket No. 16 at 12; Docket No. 33 at 8 n.5, defendants do not dispute that they are Delaware corporations with principal places of business in Georgia. *See* Docket No. 31 at 2. By comparison, plaintiff is a resident of Colorado, the parties negotiated and executed the employment agreement in Colorado, plaintiff worked for Heartland in Colorado, and Heartland engaged in the alleged discriminatory conduct in Colorado. *Id.* Colorado therefore has a strong interest in the adjudication of this case both as plaintiff's state of residence and as the locus of the parties' dispute. *See Oceanside Ten Holdings.com, LLC*, 2018 WL 2277004, at *3 (noting that "states have an interest in adjudicating claims by or against their residents").

Defendants argue that the governing law factor favors transfer to New Jersey

because the choice-of-law provision in plaintiff's employment agreement establishes that plaintiff's claims are governed by New Jersey law. Docket No. 16 at 13. However, this position is somewhat weakened by defendants' assertion that the "gravamen of Plaintiff's Complaint is her claim for gender discrimination in violation of [ ] Title VII, a federal statute," *id.* at 12, and it is not clear whether the choice-of-law provision is enforceable, given that there is little apparent connection between New Jersey and the parties' dispute. *See* Docket No. 31 at 7 n.3; *Collins v. Mary Kay, Inc.*, 874 F.3d 176, 184 (3d Cir. 2017) (stating that, under New Jersey's choice-of-law rules, a choice-of-law clause will not be enforced if "the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice" (internal quotation marks omitted)); *Burke v. Sterling Trust Co.*, No. 13-cv-03046-RBJ-KLM, 2014 WL 1409423, at *3 (D. Colo. Apr. 11, 2014) (same, with respect to Colorado's choice-of-law rules).

Defendants also contend that the case should be transferred to the District of New Jersey because the median time from filing to disposition is almost four months shorter than in the District of Colorado. Docket No. 16 at 11-12. But defendants admit that "some other metrics may favor the District of Colorado" as the less congested forum, *see* Docket No. 16 at 12 n.7, and the Court finds that the issue of docket congestion is entitled to less weight in light of the fact that "federal court dockets consistently shift." *Cherry Creek Mortg. Co., Inc.*, 2018 WL 6249887, at *3.

Even assuming that New Jersey is the less congested forum and would be more familiar with the state law governing plaintiff's claims, these factors are not strong enough in this case to override the interest in judicial economy, which weighs heavily

15

against transferring half of plaintiff's claims to a forum with a tenuous connection to the parties' dispute.  See Eastcott, 2016 WL 3959076, at *3 (holding that the public interest factors supported denying the defendant's motion for transfer where the forum-selection clause applied to only some of the plaintiff's claims, judicial economy "heavily favor[ed] litigating all claims together," and there was a "local stake in the outcome of th[e] dispute"); Jes Solar Co., Ltd. v. Matinee Energy, Inc., 2014 WL 2885476, at *2 (D. Ariz. June 25, 2014) (declining to enforce forum-selection clause where it would force the plaintiffs to proceed piecemeal and "contravene federal policy favoring efficient resolution of controversies" (internal quotation marks omitted)).

Because the Court finds that the public-interest factors heavily support allowing plaintiff to litigate all of her claims in the District of Colorado, defendants' motion to transfer will be denied.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendants' Motion to Dismiss Due to Improper Venue or, In the Alternative, to Transfer Venue to the District of New Jersey [Docket No. 16] is **DENIED**.

DATED September 16, 2019.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
Chief United States District Judge