IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 18-cv-03360-PAB-SKC

ANNE LAWSON,

    Plaintiff,

v.

HEARTLAND PAYMENT SYSTEMS, LLC, a Delaware limited liability company,

    Defendant.

## ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment [Docket No. 88]. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I. BACKGROUND[1]

Defendant provides "electronic-based payment processing systems, such as debit and credit card payment systems, to commercial entities." Docket No. 88 at 2, ¶ 1. Plaintiff began working for defendant as a relationship manager on May 26, 2014, and her employment was at-will. *Id.* at 2-3, ¶¶ 2, 4. As a relationship manager, plaintiff had certain monthly production requirements. She had to earn $6,000 in new profit each month, which was called scoring a "WIN." *See id.* at 3-4, ¶ 7. Additionally, defendant requires relationship managers to (1) "score a WIN in the month following any month in which they fail to score a WIN"; (2) "score WINs in at least 3 months in every 4 consecutive month period"; and (3) "score WINs in

---

[1] The following facts are undisputed unless otherwise indicated.

at least 9 months in every 12 consecutive month period." *Id.* at 3-4, ¶ 7.

If a relationship manager fails to meet these requirements, she begins a four week improvement period. *See id.* at 4, ¶ 8. During the improvement period, the relationship manager needed to (1) earn $6,000 in new profit, (2) set "20 confirmed appointments" with potential clients "each week"; (3) "conduct" the appointments "with the support of his or her Manager"; and (4) give her manager "daily reports of all sales activities" until the relationship manager met her $6,000 in new profit requirement. *See id.* Failure to meet these requirements could result in "immediate termination of employment." *Id.* In some circumstances, this period could be extended beyond four weeks. *See* Docket No. 100 at 9, ¶ 8; Docket No. 109 at 7, ¶ 8.

In August 2016, Jake Williams, the VP of Sales for the Midwest Region, sent an email to all district managers, including plaintiff's manager, Michael Collins, that defendant's leadership needed a "mindset change[]" and that they were "to hold the production notice line" by focusing on relationship managers who had more than five losses in twelve months or more than one in four. *See* Docket No. 88 at 2-4, ¶¶ 3, 9. Plaintiff failed to meet her production quotas 14 times in the roughly 28 months she worked for defendant.[2] *Id.* at 4-5, ¶ 10. She also failed to meet her production targets in the twelve months proceeding her termination; had five losses in twelve months; and had losses in two out of four consecutive months. *Id.* As a result, on September 1, 2016, Mr. Collins "issued [p]laintiff a Production Notice." *Id.* at 5, ¶ 11. The Production

---

[2] Plaintiff denies that she worked a "full" 28 months because she was fired on September 27. *See* Docket No. 100 at 3, ¶ 10. She does not, however, deny that she failed to meet her quota 14 times. *See id.*

Notice informed plaintiff that "her employment was 'at risk'" and required her to meet minimum production requirements in the next three months, beginning with September, the month the notice was issued. *Id.*, ¶ 12. Additionally, the Production Notice directed plaintiff to (1) send a "daily intention e-mail outlining her plan for the day," (2) have a minimum of five "verifiable . . . first time appointments," and (3) maintain a minimum of $6,000 in new profit each month for the next three months. *Id.*

Plaintiff did not meet the requirements of the production notice.[3] *See id.*, ¶ 13. Plaintiff did not send her daily intention emails, *see id.*, ¶ 14, and she did not submit five verifiable first time appointments.[4] *See id.* at 5-6, ¶ 15. Plaintiff entered as separate entities two branches of a client and listed the same contact person for both branches.

---

[3] Plaintiff denies this fact. *See* Docket No. 100 at 3, ¶ 13. However, her denial is unsupported. The two documents she cites are irrelevant. First, she cites defendant's production requirements and the improvement process, which say nothing regarding whether plaintiff met those requirements. *See id.* (citing Docket No. 88-13). Second, she cites a spreadsheet of her new profit during her employment with defendant. *See id.* (citing Docket No. 88-14). Not only does this document show that plaintiff did not meet the $6,000 in new profit requirements for September, it says nothing regarding the other requirements of the improvement notice. *See* Docket No. 88-14 at 1. Federal Rule of Civil Procedure 56(e)(2) permits a court to deem a fact not "properly address[ed]" as "undisputed purposes of the motion." *See* Fed. R. Civ. P. 56(e)(2); *see also* Practice Standards (Civil cases), Chief Judge Philip A. Brimmer § III.F.3.b.iv (stating that a denial must be accompanied by a "specific reference to material in the record supporting the denial"); *see also id.*, § III.F.3.b.ix ("Failure to follow these procedures . . . may cause the Court to deem certain facts as admitted.") Given plaintiff's failure to address this fact and her citation to irrelevant record evidence, the Court deems it admitted.

[4] Plaintiff denies this fact, saying there is no requirement that her first time appointments be verified. *See* Docket No. 100 at 4, ¶ 15. However, she admits that her production notice required her to submit five verifiable first time appointments, *see id.* at 3, ¶ 12, and she fails to deny that several entries lacked a contact name. As a result, the Court deems this fact admitted pursuant to Rule 56(e)(2). *See also* Practice Standards (Civil cases), Chief Judge Philip A. Brimmer § III.F.3.b.ix.

*See id.* at 6, ¶ 16.  Plaintiff also provided entries for first time appointments in other states, like Iowa and Minneapolis, and had scheduled appointments far apart from each other with minimal time between.[5]  *See id.*, ¶ 17.  Mr. Williams concluded that plaintiff's first time appointments were not legitimate and that she failed to meet production requirements and, as a result, fired plaintiff.[6]  *See id.* at 6-7. ¶ 18.  Mr. Williams had discharged other relationship managers who failed to meet production requirements.  *See id.* at 7, ¶ 19.  At the time of her termination, plaintiff had earned $1,156.54 in new profit.  *See id.*, ¶ 20.

Compared to some of plaintiff's colleagues, plaintiff generally performed worse.  For example, Charles Howard had "stronger and more consistent numbers" than plaintiff and, in the twelve months preceding plaintiff's termination, Mr. Howard hit the $6,000 new profit goal.[7]  *See id.* at 10-11, ¶ 32.  Pablo Loya also had better numbers than plaintiff, although he only brought in $2,232 in new profit in September, the same month he was also placed on a production notice.  *See id.* at 11, ¶ 33; Docket No. 100

---

[5] Plaintiff denies that the far away appointments were illegitimate, but does not deny that she scheduled appointments in other states.  *See* Docket No. 100 at 4, ¶ 17.

[6] Plaintiff admits that these were Mr. Williams' stated reasons but denies that they were the real reasons.  *See* Docket No. 100 at 4-5, ¶ 18.  While plaintiff says she, at one point, submitted five first time appointments, and contests whether Mr. Williams believed that the first time appointments were not legitimate, she only cites to her deposition testimony where she speculates about Mr. Williams' true motives, which does not support her denial.  *See id.* at 4-5, ¶¶ 15-18.

[7] Plaintiff denies that "Mr. Howard met Production Requirements," and states that Mr. Howard, over a 36 month period that extends past plaintiff's termination, only scored a WIN 15 times.  *See* Docket No. 100 at 7, ¶ 32.  She does not, however, deny that Mr. Howard met the $6,000 requirement in the twelve months preceding her termination.

at 13, ¶ 30.  However, Mr. Loya's numbers were still not up to defendant's standards, and he was eventually terminated about six months after plaintiff.  *See* Docket No. 88 at 11, ¶ 33.  Plaintiff did perform better than Derek Larsen, who had losses in two out of four consecutive months and only brought in $249 in new profit in September 2016, the same month he was placed on a production notice.  *See* Docket No. 100 at 13-14, ¶ 35.

On December 31, 2018, plaintiff filed suit.  *See* Docket No. 1.  In her second amended complaint, she brings claims for gender discrimination in violation of Title VII, wrongful termination in violation of public policy, withholding of wages pursuant to the Colorado Wage Claim Act, Colo. Rev. Stat. § 8-4-101 *et seq.*, and breach of contract. Docket No. 54 at 10-13.  On August 28, 2020, defendant moved for summary judgment on all of plaintiff's claims.  *See* Docket No. 88.  In its November 17, 2020 Order, the Court dismissed all but plaintiff's Title VII claim.  *See generally* Docket No. 108.

## II. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-50 (1986).  A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc*., 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment.  *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a

verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115. When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

### III.  ANALYSIS

Plaintiff asserts a claim for sex discrimination in violation of Title VII of the Civil Rights Act. Docket No. 54 at 10. Title VII makes it unlawful "for an employer . . . to discharge any individual . . . because of such individual's race, color, religion, sex, or national origin." *See* 42 U.S.C. § 2000e-2(a)(1). Plaintiff brings a disparate treatment claim, which can be demonstrated either by "direct evidence that a workplace policy,

practice, or decision relies expressly on a protected characteristic" or by "using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 212 (2015). Defendant argues that plaintiff has not supplied any evidence of direct discrimination and that, under *McDonnell Douglas*, plaintiff cannot make out a prima facie case of sex discrimination. *See* Docket No. 88 at 12-14. Plaintiff argues that there is evidence of direct discrimination and, as a result, *McDonnell Douglas* is inapplicable. *See* Docket No. 100 at 18. However, plaintiff contends that, even if *McDonnell Douglas* is applicable, she has satisfied her burden to raise a disputed issue of material fact that defendant's stated reasons for her termination were pretextual. *See id.* at 19-24.

### A. Direct Evidence of Discrimination

"When a Title VII plaintiff presents direct evidence of discrimination, the *McDonnell Douglas* burden-shifting analysis doesn't apply." *See Fassbender v. Correct Care Sols., LLC*, 890 F.3d 875, 883 (10th Cir. 2018) (citing *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985)). "Direct evidence demonstrates on its face that the employment decision was reached for discriminatory reasons." *Id.* (citation omitted). Evidence is direct only if it "proves the existence of a fact in issue without inference or presumption." *Id.*

Plaintiff argues that those who terminated her employment "made egregiously sexist and demeaning comments" to her and that these comments were "pervasive." *See* Docket No. 100 at 18. Because, according to plaintiff, Mr. Collins and Mr. Williams terminated plaintiff, "there is a material dispute of fact as to whether Mr. Collins acted

7

on his discriminatory beliefs when he terminated [p]laintiff." *Id.* The Court finds plaintiff's argument unpersuasive.

First, Mr. Williams, not Mr. Collins, was the one who made the decision to terminate plaintiff.[8] *See id.* at 4, ¶ 18. But sexist comments by people other than the decisionmaker are irrelevant to the analysis. *See Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994) ("[C]omments by non-decisionmakers are not material."). Because it is undisputed that Mr. Williams made the decision to terminate her, and there is no evidence in the record, disputed or otherwise, demonstrating any acts of discrimination by Mr. Williams, *see* Docket No. 100 at 16-17, ¶¶ 52-60, plaintiff has not shown evidence of direct discrimination.

Second, even if the sexist comments by Mr. Collins were relevant, they still would be insufficient to demonstrate direct evidence. "[A] supervisor's animosity towards a protected group generally is not – on its own – direct evidence of discrimination. Rather, the plaintiff must show that the supervisor 'acted on his or her discriminatory beliefs.'" *Fassbender*, 890 F.3d at 883 (quoting *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1216 (10th Cir. 2013)). In *Fassbender*, a supervisor made several comments regarding her employees' pregnancies and stated that she desired to have

---

[8] Plaintiff fails to admit or deny that Mr. Williams was the one who terminated her. *See* Docket No. 88 at 6-7, ¶ 18; Docket No. 100 at 4-5, ¶ 18. Plaintiff, however, is required to admit or deny each fact, or else the Court may deem it admitted. *See* Fed. R. Civ. Proc. 56(e)(2) (permitting a court to consider a fact that a party "fails to properly address" as "undisputed for the purposes of the motion"); *see also Townsend v. Adams 12 Five Star Schs.*, No. 16-cv-02354-PAB-MEH, 2018 WL 741026, at *1 n.2 (D. Colo. Feb. 7, 2018) (considering "plaintiff to have admitted" facts to which she did not respond). Accordingly, by plaintiff failing to admit or deny that Mr. Williams was the one who terminated her, the Court deems this fact to be admitted.

fewer pregnant subordinates.  *Id.*  The Tenth Circuit found this insufficient to demonstrate direct evidence of discrimination because, even though the supervisor made these comments, "she didn't suggest that [the plaintiff's] pregnancy somehow made her unqualified for her position."  *Id.*  Because this evidence did not "demonstrate[] on its face" that the supervisor fired the plaintiff due to her pregnancy, there was no evidence of direct discrimination.  Plaintiff runs into the same issue here.  Assuming Mr. Collins made the statements plaintiff alleges, which is disputed, none of those statements on their face show that Mr. Collins fired plaintiff due to her sex.  Plaintiff asserts that Mr. Collins made generally derogatory remarks such as: (1) suggesting plaintiff can get away with more because she is a woman: (2) describing his sex life with his wife; and (3) asked plaintiff what her favorite sexual position is.  *See* Docket No. 100 at 16-17 ¶¶ 54-56, 60.  However, plaintiff fails to show any connection between these comments or Mr. Collin's attitude toward women and plaintiff's firing.

As a result, plaintiff has not provided evidence of direct discrimination.

### B.  *McDonnell Douglas*

A plaintiff who is unable to demonstrate direct evidence of discrimination may use circumstantial evidence.  *See Fassbender*, 890 F.3d at 884.  In this situation, the Court applies the *McDonnell Douglas* three-step burden shifting framework.  *See id.* (citing *Hiatt v. Colo. Seminary*, 858 F.3d 1307, 1315-16 (10th Cir. 2017)).  Under the first step, plaintiff must "establish a prima facie case of discrimination."  *Id.* (citing *Bird v. W. Valley City*, 832 F.3d 1188, 1200 (10th Cir. 2016)).  Plaintiff must demonstrate that she is (1) "a member of a protected class (2) who was terminated (3) despite being

qualified for her position, and (4) the job wasn't eliminated." *Id.* If plaintiff succeeds in making a prima facie case, the second step requires defendant "to articulate a legitimate, nondiscriminatory reason" for plaintiff's termination. *See E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007). At the third step, the burden shifts back to plaintiff to "show [that] there is a genuine issue of material fact as to whether the proffered reasons are pretextual." *See Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005).

Defendant argues that, because it is undisputed that plaintiff did not fulfill her production goals or the requirements of her production notice, she was not qualified for the position and, therefore, cannot make out a prima facie case. *See* Docket No. 88 at 15-16. Defendant does not argue that plaintiff has not met the other three elements of a prima facie case. *See id.* Plaintiff claims that she was employed by defendant for two and a half years and possessed the same "objective qualifications she held when she was hired" and, thus, has made out her prima face case. *See* Docket No. 100 at 20. The Court agrees with defendant that plaintiff has failed to make a prima facie case for discrimination in violation of Title VII.

While plaintiff's burden at step one is "not onerous," she still must "show[] actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a discriminatory criterion illegal under Title VII." *See Young*, 575 U.S. at 298 (citations and quotations omitted). As plaintiff admits, she consistently did not meet her production requirements: she failed to meet her production targets in the twelve months proceeding her termination;

had five losses in twelve months; and had losses in two out of four consecutive months. Docket No. 88 at 4-5, ¶ 10. Additionally, once placed on a production notice, she failed to meet the terms of the production notice, such as meeting the production requirements, sending daily intention emails, and having five verifiable first time appointments.[9] *See id.* at 5-6, ¶¶ 13-15. Defendant had objective criteria for employment, which plaintiff admits she did not meet. Therefore, plaintiff was not qualified for her position and it is not "more likely than not" that she was fired because of her sex; it is more likely than not that she was fired because she consistently failed to meet the general requirements of her role and the specific requirements for improvement. *See Cortez v. Wal-Mart Stores, Inc.*, 460 F.3d 1268, 1275 (10th Cir. 2006) (analyzing the "qualified" aspect of a prima facie case and stating that "[w]e have long respected employers' wide latitude in setting job standards and requirements and in deciding whether applicants meet those standards."); *see also Salemi v. Colo. Pub. Employees' Retirement Assoc.*, 747 F. App'x 675, 691 (10th Cir. 2018) (unpublished) ("[A] court may look to a written job description to help determine the qualifications and essential job functions of a position.").

Plaintiff disagrees because she had been employed by defendant for a significant period of time, she continues to possess the same qualifications she had when she was hired, she testified she performed well, and she has presented "some

---

[9] While plaintiff disputes whether her first time appointments were in fact legitimate, she does not dispute that Mr. Williams or Mr. Collins were not aware of the reasons for discrepancies in the appointments – being in other states, double booking certain clients – such that they knew that they were verifiable and legitimate. *See* Docket No. 100 at 4, ¶¶ 15-17. As a result, there is no material dispute regarding the objective criteria before the decisionmaker.

evidence of good performance." *See* Docket No. 100 at 20. First, "[w]hile evidence of tenure alone may suffice to demonstrate qualification for a job in some cases, it is by no means automatic." *See Gaskin v. Sci. Applications Int'l, Inc.*, 792 F. App'x 586, 589 (10th Cir. 2019) (unpublished). The issue with plaintiff's tenure argument is that, despite her tenure, she admittedly continued to underperform. Plaintiff cannot succeed on a prima facie case by simply arguing that she was qualified based on her experience when, even with that experience, she was not meeting the objective criteria of her job.

Plaintiff's argument regarding possessing the same qualifications she had when she was hired also fails. Her reliance on *Smith v. Oklahoma ex rel. Tulsa County District Attorney*, 245 F. App'x 807, 812 (10th Cir. 2007) (unpublished), is misplaced. There, construing the evidence in the light most favorable to the plaintiff, the Tenth Circuit reasoned that the plaintiff's five-year tenure as an investigator, her own assessment of her performance, and that her employer "did not formally reprimand, suspend, or discharge her for the alleged performance deficiencies" until budget concerns arose, could, together, support the plaintiff's "contention that she was performing her job adequately." *Id.* Here, however, plaintiff did not meet the objective criteria defendant had in place for someone in her position, and there is no countervailing evidence, such as post-hoc explanations that arose after budgetary concerns, *see id.*, to support plaintiff's assertion that these job requirements were not legitimate. It makes little sense for plaintiff to use her qualifications at the time of hiring and her own beliefs regarding her performance when all the evidence in the record demonstrates that plaintiff was not meeting performance standards. And plaintiff

12

provides no support for the proposition that either her testimony or her qualifications at the time of hiring can overcome objective evidence of plaintiff's performance.

Finally, plaintiff argues that all she needs to provide is "some evidence" of satisfactory performance. Docket No. 100 at 20; *see also Paup v. Gear Products, Inc.*, 327 F. App'x 100, 109 (10th Cir. 2009) (unpublished) (noting that a plaintiff "need only provide 'some evidence of good performance'"). The only evidence she provides, however, is her own testimony. *See* Docket No. 100 at 20 ("Plaintiff testified that her work was satisfactory."). For the reasons already stated, that testimony is insufficient when compared against the objective standards she admits she did not meet. The only evidence in the record is that plaintiff consistently failed to meet her production goals and failed to meet the requirements of her improvement plan. As a result, she has not presented "some evidence," *Paup*, 327 F. App'x at 109, sufficient to defeat summary judgment.

Therefore, the Court finds that plaintiff has failed to make out a prima facie case of discrimination in violation of Title VII. Without a prima facie case, the rest of plaintiff's claim fails. *See Adamson v. Multi Community Diversified Servs., Inc.*, 514 F.3d 1136, 1147 (10th Cir. 2008) ("In the absence of facts tending to establish [a prima facie case], plaintiff is not entitled to the presumption of discrimination and a defendant is not required to defend against the charge."). Accordingly, defendant's motion for summary judgment is granted.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendant's Motion for Summary Judgment [Docket No. 88] is **GRANTED**.  It is further

**ORDERED** that judgment shall enter for defendant and against plaintiff on all claims.  It is further

**ORDERED** that, within 14 days of the entry of judgment, defendant may have its costs by filing a bill of costs with the Clerk of the Court.  It is further

**ORDERED** that this case is closed.


DATED March 29, 2021.

BY THE COURT:

_____
PHILIP A. BRIMMER
Chief United States District Judge
